IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| EMMANUEL ANNOR, Individually and on Behalf of Those Similarly Situated | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CAUSE NO. 03:06-cv-00811 |
| LYON FINANCIAL SERVICES, INC. d/b/a U.S. BANCORP BUSINESS EQUIPMENT FINANCE GROUP; and SEAMLESS SOLUTIONS, INC., | § § § § | JURY TRIAL |
| Defendants. | § § § | |

## PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Comes now Plaintiff, EMMANUEL ANNOR ("Plaintiff") individually and on behalf of those similarly situated and alleges as follows:

## I.

## JURISDICTION AND VENUE

1.      The court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA").

2.      There are at least 100 members in each of the proposed plaintiff classes.

3.      The combined claims in each class exceed $5 million, exclusive of interest and costs.

4.      There is minimal diversity as the named Plaintiff is a citizen of Texas, and Defendant Lyon is a citizen of Minnesota pursuant to 28 U.S.C. § 1332.

5.      Venue in this case is appropriate because Defendants' conduct occurred in the Southern District of Texas and Plaintiff resides in the Southern District of Texas.

## II.

## PARTIES

6.      Emmanuel Annor is an individual d/b/a Mail A Box located at 9639 Hillcroft,

Houston, Texas 77096.

7.     Lyon Financial Services, Inc. d/b/a U.S. Bancorp Business Equipment Finance Group ("Lyon") is a corporation organized and existing under the laws of the state of Minnesota, with its principal place of business located at 1310 Madrid Street, Marshall, Minnesota 56258. Lyon is qualified to conduct business in the State of Texas, and process may be served upon Lyon by serving its registered agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

8.     Seamless Solutions, Inc. ("Seamless") is a corporation organized and existing under the laws of the state of Texas, with its principal place of business located at 7786 Blankenship Drive, Suite 100, Houston, Texas 77055.  Process may be served upon Seamless by serving its registered agent, Charles M. Hansen and/or Sandra L. Hansen at 7786 Blankenship Drive, Suite 100, Houston, Texas 77055.

9.     Copeco, Inc. d/b/a Seamless Solutions ("Copeco") is a corporation organized and existing under the laws of the state of Texas, with its principal place of business located at 7786 Blankenship Drive, Suite 100, Houston, Texas 77055.  Process may be served upon Seamless by serving its registered agent, Charles M. Hansen and/or Sandra L. Hansen at 7786 Blankenship Drive, Suite 100, Houston, Texas 77055.

### III.

### BACKGROUND FACTS

10.     Lyon is a corporation conducting business in locations throughout Texas, including the Southern District of Texas.  U.S. Bancorp Business Equipment Finance Group is a division of Lyon.   Lyon provides leasing programs through vendors of equipment, including vendors in the Southern District of Texas.  Lyon uses various trade and "doing business as" names to conduct the business which is the subject of this complaint including but not limited to Manifest Funding Services, Office Equipment Finance Services, Bank Services Group, Healthcare Services Group, Portfolio Services, Copeco, and Seamless Solutions.  For ease of reference all aforementioned groups and divisions of Lyon are collectively referred to herein as

"Lyon."

11.     Lyon owns leases covering various types of office equipment and other kinds of personal property.

12.     On or about December 12, 2003, Plaintiff entered into a lease agreement ("Agreement") with Lyon.  The Agreement is attached hereto as Exhibit A and is hereby incorporated by reference.

## A.     Property Damage Surcharge

13.     Substantially similar provisions in the Lyon leases require lessees to provide property insurance, but, if the lessees do not do so, give Lyon the right to charge its customers a Property Damage Surcharge for enrollment in a Property Damage Coverage Program.

14.     The substantially similar provisions are analytically identical for purposes herein.

15.     One such provision is as follows:

COLLATERAL PROTECTION AND INSURANCE:

> You agree to keep the equipment fully insured against loss with us as loss payee in an amount not less than replacement cost until this Agreement is terminated.  You also agree to obtain a general public liability insurance policy from anyone who is acceptable to us and to include as an insured on the policy.  **You agree to provide us certificates or other evidence of insurance acceptable to us, before this Agreement begins or, we will enroll you in our property damage coverage program and bill you a property damage surcharge as a result of our increased administrative costs and credit risk.**  As long as you are current at the time of the loss (excluding losses resulting from acts of god), the replacement value of the equipment will be applied against any loss or damage as per paragraph 7.  **You must be current to benefit from the property damage surcharge program.**  NOTHING IN THIS PARAGRAPH WILL RELIEVE YOU OF YOUR RESPONSIBILITY FOR LIABILITY INSURANCE COVERAGE ON THIS EQUIPMENT.

(Capitalization in original.  Emphasis added.)

16.     The substantially similar lease provisions also contain a term providing that the lease "can only be modified by written agreement and not by course of performance."

17.     The substantially similar lease provisions also contain a choice of law term.

18.     After an equipment lease is in place, if Lyon has not received evidence of insurance from the lessee, it begins to charge the lessee a Property Damage Surcharge.  The surcharge is allegedly for a Property Damage Coverage Program and is allegedly tied to Lyon's increased administrative costs and credit risk.  The Lyon surcharge, however, is not for a licensed insurance program.  Instead, Lyon retains all of the proceeds of the Property Damage Surcharge and self-funds claim payment in the unlikely event of a claim.  Also, the Property Damage Surcharge includes amounts far greater than any increased administrative costs and credit risk incurred by Lyon, in that Lyon retains most or all of the surcharge as profit.  The amounts charged by Lyon for property damage coverage are exorbitant in that they greatly exceed a reasonable premium charged by a licensed insurer and the amounts bear no reasonable relationship to any increased administrative costs or additional risk taken by Lyon.  Lyon is not licensed to offer, sell, or underwrite collateral protection insurance.

19.     During the statutory period, Defendants made the incorporated representations contained in the Agreement to Plaintiff.  Representations were also made in agreements with class members that are substantially similar for the purposes of this litigation.  Defendants also made representations to Plaintiff and class members each month by way of invoices when they charged a Property Damage Surcharge.

20.     Defendants represented by way of the Agreement and invoices that the Property Damage Surcharge was for insurance and that the amount charged would be for their alleged increased administrative cost and credit risk, and not for any other amounts, specifically a profit to Lyon.

21.     The representations that the Property Damage Surcharge was for insurance were false, as were the representations that Lyon would only charge Plaintiff and class members a Property Damage Surcharge for its alleged increased administrative cost and credit risk.  The facts were and are that the Property Damage Surcharge was not for insurance and that Lyon intended to charge and did charge Plaintiff and class members not only for any alleged increased administrative costs and credit risk, but also for additional fees which were taken as Lyon profit.

**B.**     **UCC Filing Fees**

      22.    The substantially similar lease provisions concerning the UCC fees provide:

> You also agree to pay us any filing fees prescribed by the Uniform Commercial Code or other law and reimburse us for all costs involved in completing this transaction.

Lessees are charged a UCC Filing Fee. However, Defendants do not file a UCC financing statement, or if such a statement is filed, the fee does not bear any reasonable or good faith relationship to the costs incurred.

      23.    During the statutory period, Defendants made the incorporated representations contained in the Agreement to Plaintiff. Representations were also made in agreements with class members that are substantially similar for the purposes of this litigation. Defendants also made representations to Plaintiff and class members each month by way of invoices when it charged a UCC Filing Fee.

      24.    Defendants represented by way of the Agreement and invoices that a UCC Filing Fee would only be charged if in fact Lyon filed a UCC Statement and further represented that the only charges to Plaintiff would be Lyon's costs in filing said statement.

      25.    The representations that the UCC Filing Fee would only be charged if in fact Lyon filed a UCC Statement and that the only charges to Plaintiff would be Lyon's costs in filing said statement were false. The facts were and are that Lyon intended to charge and did charge Plaintiff and class members a UCC filing fee whether a UCC Statement was filed or not. In addition, if a statement was in fact filed, Lyon charged Plaintiff and class members not only for alleged costs in filing the UCC statement but also for additional fees that were taken as a profit by Lyon.

**C.**     **Monthly Property Tax**

      26.    The substantially similar lease provisions concerning the Monthly Property Tax provide:

> You agree to pay when due all taxes (including personal property tax, fines and penalties) relating to this Agreement or Equipment. If we pay any of the above for you, you agree to reimburse us and to pay us a processing fee for each payment we make on your

behalf.

Lessees are also charged the Monthly Property Tax on the leased goods. However, the amount of the Monthly Property Tax is an amount that bears no reasonable relationship to the tax on the leased goods or the processing fee for payments made on the lessee's behalf.

27.    As a result of the actions of Defendants, Lyon has received substantial amounts over those amounts that its lessees contracted to pay.

28.    During the statutory period, Defendants made the incorporated representations contained in the Agreement to Plaintiff. Representations were also made in agreements with class members that are substantially similar for the purposes of this litigation. Defendants also made representations to Plaintiff and class members each month by way of invoices when it charged a Monthly Property Tax.

29.    Defendants further represented by way of the Agreement and invoices that the Monthly Property Tax was to reimburse Lyon for its costs associated with the paying the property taxes, and not for any other amounts, specifically a profit to Lyon.

30.    In addition, the representations that Lyon would only charge Plaintiff and class members a Monthly Property Tax to reimburse its costs associated with paying the Monthly Property Tax were false. The facts were and are that Lyon intended to charge a property tax that was not commensurate with the value of the personal property and did charge Plaintiff and class members a property tax that was not commensurate with the value of the personal property for the purpose of deriving a profit for Lyon.

31.    In addition, the representations that Lyon would only charge Plaintiff and class members a Monthly Property Tax to reimburse its costs associated with paying the Monthly Property Tax were false. The facts were and are that Lyon intended to charge a property tax that was not commensurate with the value of the personal property and did charge Plaintiff and class members a property tax that was not commensurate with the value of the personal property for the purpose of deriving a profit for Lyon.

# IV.

## DEFENDANTS' WRONGFUL CONDUCT

32.     The entire scheme and artifice were engineered and practiced by Defendants so as to charge the customer fees separate from the charges for the equipment, for which there is no actual corresponding cost, thereby increasing the profits made by the Defendants and making comparison shopping for lease terms difficult or impossible for the lessee.  In fact, the charges are intentionally kept small so as not to generate inquiries or complaints from customers but are applied so as to cumulatively generate disproportionate profits for the Defendants.

33.     When Defendants made the representations set forth above in paragraphs 12-30, they knew them to be false and made the representations with the intention to deceive and defraud Plaintiff and class members and to induce Plaintiff and class members to act in reliance upon those representations in the manner hereafter alleged, or with the expectation that Plaintiff and class members would so act.  The purpose of representing that Defendants would only charge their costs as related to the Property Damage Surcharge, the UCC Filing Fee, and the Monthly Property Tax was to deceive Plaintiff and others into not investigating whether insurance could be obtained more cost effectively and to discourage Plaintiff and others from attempting to compare competing lease terms or negotiate with respect to the other fees. Defendants knew that if they represented that they would only charge for its costs then its customers would further believe that the other aforementioned fees were direct remittances to a third party and therefore non-negotiable.

34.     At the time the representations were made by Defendants, and at the time they took the actions herein alleged, Plaintiff and class members were ignorant of the falsity of the representations and believed them to be true.  In reliance on these representations, Plaintiff and class members were induced to and did pay to Defendants a Property Damage Surcharge, and/or the UCC Filing Fee, and/or the Monthly Property Tax.  Had Plaintiff and class members received an accurate disclosure and been aware of the true allocation of the fees collected, they would not have taken such action.  Reliance on Defendants' representations was justified because by the

usual and customary meaning of the terms set out in the Agreement, the terms  indicate or imply that the charges imposed would be fair, proportionate and/or be set in good faith.  Furthermore, Plaintiff and other consumers had no reason to believe that Defendants would act otherwise than as represented in the Agreement.

35.     In the alternative, Defendants, under a duty to speak, suppressed material facts from the class - that the Property Damage Surcharge, the UCC Filing Fee, and the Monthly Property Tax were all in violation of the Agreement and greatly exceeded the amounts actually expended by Defendant, or alternatively, the amounts that would be reasonable not including payments or other inducements to Defendants.

36.     Without knowledge, Plaintiff and class members acted on the omission by paying grossly excessive charges, although Plaintiff and class members were not obligated to do so. Plaintiff and class members were induced to and did pay Defendants excessive charges bearing no reasonable relationship to Defendants' costs and increased risks for the Property Damage Surcharge, the UCC Filing Fee, and the Monthly Property Tax, as opposed to obtaining their own insurance and/or comparing competing lease terms and/or attempting to negotiate these charges.  Had Plaintiff and class members known the actual facts, they would not have taken such action.  Acting on the omissions of Defendants were justified because by their usual and customary meaning and in a "simple, easy-to-read document" the terms set out in the Agreement do not include a profit or other charges.  Furthermore, Plaintiff and class members had no reason to believe that Defendants would act otherwise than as represented in the Agreement.

37.     Defendants' deceptive business practices have increased the profits of Defendants, have defrauded many customers within and outside the State of Texas, and constitute a breach of contract, misrepresentation, and an unlawful, deceptive, and unfair course of conduct.

# V.

## ALLEGATIONS CONCERNING TRANSACTIONS WITH PLAINTIFF

38.     Under terms of the Agreement, Lyon leased to Plaintiff a 4027 Savin copier for a period of 63 months at a monthly payment of $284.00.

39.     Under terms of the Agreement, Plaintiff agreed that, if he did not provide evidence of insurance covering the equipment, Lyon would enroll him in its "property damage coverage program" and bill "a property damage surcharge as a result of our increased administrative costs and credit risk."

40.     The Agreement provides that "[t]his Agreement may be modified only by written agreement and not by course of performance."

41.     Plaintiff never signed a writing modifying the terms of the original insurance provisions of the Agreement.

42.     Plaintiff did not immediately provide Lyon with an insurance certificate and received a line item on his monthly invoice.  Subsequently, Lyon sent standardized form invoices to Plaintiff that included a Property Damage Surcharge for the Property Damage Coverage Program in the amount of $52.76 per month.  Despite its promise and obligation to charge only an amount for insurance and its alleged increased administrative costs and credit risk. Lyon charged Plaintiff far more and did not provide insurance.  The charge of $52.76 greatly exceeds any increased administrative cost or credit risk incurred by Lyon, bears no reasonable relationship to alleged increased administrative costs and credit risk to Lyon, and the charge is not set in good faith.

43.     Moreover, Lyon is not licensed to underwrite or sell insurance in the State of Texas.  Further, Lyon did not buy insurance from a third party for the Property Damage Coverage Program.

44.     Lyon also charged Plaintiff a UCC Filing Fee.  The Agreement provides that "[y]ou also agree to pay us any filing fees prescribed by the Uniform Commercial Code or other law and reimburse us for all costs involved in completing this transaction."  In fact, Lyon did not

file a UCC financing statement covering the Plaintiff's leased equipment.  As to the class members, Defendants filed the UCC statement but imposed an excessive fee, or did not file the UCC Statement.  Alternatively, the fees imposed bear no reasonable relationship to and greatly exceed the costs of filing a UCC financing statement, and the charge is not set in good faith.

45.     Lyon also charged Plaintiff a Monthly Property Tax.  The amount assessed as the Monthly Property Tax charge was not the actual amount due and owing to any taxing authority.  On information and belief, Lyon charged sales tax for items on which there arguably may have been no tax assessed, including but not limited to the amount charged for Monthly Property Tax.  Also on information and belief, Lyon charged a Monthly Property Tax for items on which there was no tax due and owing.  In addition, Lyon did not reconcile Plaintiff's account to determine the actual property tax owing, resulting in Lyon keeping amounts for its own profit which it collected under the pretense that they were for a legitimate property tax.

46.     Plaintiff paid the aforementioned charges, not knowing that they were grossly excessive.

47.     The Agreement provides that Plaintiff would guarantee all payments regardless of whether the copier was lost, damaged or destroyed; would carry insurance covering the copier for such losses; and would name Lyon as an additional insured.  If Plaintiff failed to do so, Lyon had the right to enroll Plaintiff in its Property Damage Coverage Program and to charge Plaintiff a Property Damage Surcharge to cover its alleged increased administrative costs and credit risks.

48.     Plaintiff paid all of the charges, not knowing that they were grossly excessive, that they were for non-existent expenses and in breach of the terms of the Agreement.

## VI.

## CLASS ALLEGATIONS

49.     Plaintiff brings this action on behalf of himself as an individual and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Class Action Fairness Act ("CAFA").

**A.      Definition of the Class**

50.     Class members as to Plaintiff's First, Second, and Third Causes of Action are all of Lyon's lessees nationwide, with the exception of California lessees, who have been charged a Property Damage Surcharge and/or a Monthly Property Tax and a UCC filing fee by Lyon or its predecessors-in-interest and who have the following lease language:

COLLATERAL PROTECTION AND INSURANCE:

> **…You agree to provide us certificates or other evidence of insurance acceptable to us, before this Agreement begins or, we will enroll you in our property damage coverage program and bill you a property damage surcharge as a result of our increased administrative costs and credit risk…**

or

TAXES AND FEES:

> You also agree to pay us any filing fees prescribed by the Uniform Commercial Code or other law and reimburse us for all costs involved in completing this transaction.

or

> You agree to pay when due all taxes (including personal property tax, fines and penalties) relating to this Agreement or Equipment. If we pay any of the above for you, you agree to reimburse us and to pay us a processing fee for each payment we make on your behalf.

**B.      Definition of the Subclass**

51.     Subclass members as to Plaintiff's Fourth and Fifth Causes of Action are all of Lyon's lessees who reside in Texas and/or who leased equipment from Lyon in Texas and who have been charged a Property Damage Surcharge and/or a UCC filing fee and/or a Monthly Property Tax by Lyon or its predecessors in interest and who have the following lease provision:

COLLATERAL PROTECTION AND INSURANCE:

> **…You agree to provide us certificates or other evidence of insurance acceptable to us, before this Agreement begins or, we will enroll you in our property damage coverage program and bill you a property damage surcharge as a result of our increased administrative costs and credit risk…**

or

TAXES AND FEES:

> You also agree to pay us any filing fees prescribed by the Uniform
> Commercial Code or other law and reimburse us for all costs
> involved in completing this transaction.

or

> You agree to pay when due all taxes (including personal property
> tax, fines and penalties) relating to this Agreement or Equipment.
> If we pay any of the above for you, you agree to reimburse us and
> to pay us a processing fee for each payment we make on your
> behalf.

## C.    <u>Other Class Allegations</u>

52.     On information and belief, the exact numbers and identities of all class members are readily ascertainable from the records of Defendants.

53.     All claims herein have been brought and may be properly maintained as a class action pursuant to the provisions of the Federal Rule of Civil Procedure 23 and the Class Action Fairness Act ("CAFA") because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable:

a.     <u>Numerosity</u>:  On information and belief, the plaintiff class is so numerous that the individual joinder of all members would be impracticable.

b.     <u>Common Questions Predominate</u>:  Common questions of law and fact exist as to all members of the plaintiff class, and those questions clearly predominate over any questions which might affect members individually.  These common questions of law and fact include, for example, whether Lyon has breached its contractual obligations and/or committed fraud on its customers by contracting to provide insurance and then failing to do so and by hiding its profits in charges that bear no reasonable or good faith relationship to items for which it is entitled to charge.  The legal questions at issue are sufficiently similar to be manageable.

c.     <u>Typicality</u>:  On information and belief, Plaintiff's claims are typical of the claims of the members of the plaintiff class.  Plaintiff and all members of the plaintiff class sustained damages arising out of Defendants' common course of conduct complained of herein.

d.    Adequacy:  Plaintiff will fairly and adequately protect the interest of the members of the plaintiff class since Plaintiff has no interests which are adverse to the interests of absent class members and since Plaintiff has retained counsel who have substantial experience and success in the prosecution of class actions and violations of consumer statutes.

e.    Superiority:  A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all members would be impracticable.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, since most class members' individual claims for damages are likely to be modest, the expenses and burdens of litigating individual actions would make it difficult or impossible for individual class members to redress the wrongs done to them.  An important public interest will be served by addressing the matter as a class action, substantial economies to the litigants and to the judicial system will be realized, and the potential for inconsistent or contradictory judgments will be avoided.

## VII.

## FIRST CLAIM
### (Breach of Contract)

54.    Plaintiff hereby incorporates by reference all allegations above, as though fully set forth at this point.

55.    Plaintiff performed all of his obligations under the Agreement.

56.    Class members entered into substantially similar agreements with language analytically identical to the Agreement wherein they agreed to pay Lyon, within the statutory period, for the use of office equipment and other charges including a Property Damage Surcharge, a UCC Filing Fee, and a Monthly Property Tax.

57.    Per the Agreement, Lyon agreed that it would provide insurance to Plaintiff and charged Plaintiff a Property Damage Surcharge.  Defendant breached the agreement when it did not provide the insurance after agreeing to do so and accepting payment for it.

58.     Lyon breached the Agreement by charging Plaintiff and the class members a Property Damage Surcharge for Lyon's Property Damage Coverage Program.  Lyon is not licensed to sell insurance as a company or as an agent.  Lyon did not buy insurance from a third party to cover the equipment leased by Plaintiff and the class members.

59.     Lyon further breached the Agreement by charging an amount for the Property Damage Surcharge that greatly exceeds and bears no reasonable or good faith relationship to a reasonable insurance premium or Lyon's alleged increased administrative costs and credit risk or to the cost of property damage coverage.

60.     Lyon further breached the agreement by charging an amount for a UCC Filing Fee when no UCC financing statement was filed or when the charge greatly exceeds and bears no reasonable or good faith relationship to UCC filing costs.

61.     Lyon further breached the Agreement by charging an amount for a Monthly Property Tax that greatly exceeds and bears no reasonable or good faith relationship to the true property tax and processing fee for each payment.

62.     In the alternative, Lyon breached the Agreement by failing to ascertain what its alleged increased administrative costs and credit risk were, what its UCC filing costs were, and/or what the property tax was for the leased equipment, and charging Plaintiff and class members random amounts in violation of its obligations under the Agreement and in breach of the covenant of good faith and fair dealing.

63.     In the alternative, Lyon breached the covenant of good faith and fair dealing by deliberately engaging in the acts described herein in an attempt to deprive Plaintiff and class members of the benefit of the agreement.

64.     In fact the charges are simply disguised additional profit.  This additional profit has not been agreed to by the lessee, damaging Plaintiff and class members in an amount to be proved at trial.

## VIII.

## SECOND CLAIM
### (Intentional Misrepresentation)

65.     Plaintiff hereby incorporates by reference all allegations above, as though fully set forth at this point.

66.     When Defendants made the representations set forth above in paragraphs 12-47, they knew them to be false and made the representations with the intention to deceive and defraud Plaintiff and class members and to induce Plaintiff and class members to act in reliance upon those representations in the manner hereafter alleged, or with the expectation that Plaintiff and class members would so act.

67.     Plaintiff and class members relied upon Defendants' representations and were induced to and did pay Lyon excessive charges bearing no reasonable relationship to Lyon's costs and increased risks for the Property Damage Surcharge, the UCC Filing Fee, and the Monthly Property Tax.

68.     As a proximate result of the fraudulent conduct of Defendants as herein alleged, Plaintiff and class members have paid monies to Lyon to which it is not entitled, and have been damaged in an amount to be proved at trial.

69.     The aforementioned conduct of Defendants was an intentional and knowing misrepresentation, omission, deceit, or concealment of a material fact or facts known to Defendants with the intention on the part of Defendants to deprive Plaintiff and class members of property or legal rights or otherwise cause injury, and was unconscionable conduct that subjected Plaintiff and class members to a cruel and unjust hardship in conscious disregard of their rights, so as to justify an award of exemplary and punitive damages.

## IX.

## THIRD CLAIM
### (Negligent Misrepresentation)

70.     Plaintiff hereby incorporates by reference all allegations above, as though fully set forth at this point.

71.     During the statutory period, Defendants made the incorporated representations to Plaintiff and class members as set forth in paragraphs 12-47 above.

72.     Defendants' representations regarding the fees, the associated costs and credit risk were false, as alleged in paragraphs 12-47.

73.     When Defendants made these false representations, they had no reasonable grounds for believing them to be true, as set out above.

74.     Defendants made the representations with the intention of inducing Plaintiff and class members to act in reliance upon these representations in the manner previously alleged in paragraphs 12-47.

75.     As a proximate result of the fraudulent conduct of Lyon as herein alleged, Plaintiff and class have paid monies to Lyon to which it is not entitled, and have been damaged in an amount to be proven at trial.

## X.

### FOURTH CLAIM

**(Violations of The Texas Uniform Commercial Code § 2A.505 Material Misrepresentation and Fraud on a Lease)**

76.     Plaintiff hereby incorporates by reference all allegations above, as though fully set forth at this point.

77.     The Texas Uniform Commercial Code § 2A.505(d) provides for remedies to a party for material misrepresentations or fraud associated with a lease.

78.     By and through their conduct, including the conduct detailed above, Defendants engaged in activities which constitute unlawful, unfair, and fraudulent business practices prohibited by the Texas Uniform Commercial Code. Tex. Bus. & Com. Code § 1.103. Additionally, every contract or duty imposes an obligation of good faith in its performance and enforcement. Tex. Bus. & Com. Code § 1.304.

79.     Beginning at an exact date unknown as yet to Plaintiff and continuing up through the present, Defendants have committed acts of fraud and misrepresentation by engaging in a pattern of unlawful, unfair and fraudulent business practices that violate the wording and intent

of statutes and by defying Texas state law.

80.    The acts and practices described above were unlawful and unfair because they violate Texas Business & Commerce Code §§ 1.103 and 1.304.  Defendants are asserting a contractual right which they do not have and engaging in fraud and deceit.  Defendants are also engaging in the Business of Insurance without a license in Texas in violation of the Texas Insurance Code § 541.151.  Defendants also have an oppressive form contract with customers which is in many respects unenforceable.

81.    Furthermore, Defendants have violated UCC 2-103(1)(b) and 2A-218(5) by charging lessees for Property Damage Coverage in an amount that is excessive or unreasonable amount, and then not providing coverage, or for UCC Filing Fees.  Further, pursuant to the UCC, the "lease" contracts at issue are in fact finance contracts.  Many of these contracts were originated through unlicensed brokers in violation of Texas law.

82.    In addition to the aforementioned acts, Defendants charged their Texas lessees an estimated Monthly Property Tax rather than ascertaining the amount of the actual tax due.  Defendants also charged their lessees sales tax on items that arguably may not have been subject to a sales tax, including but not limited to the estimated Monthly Property Tax charge in violation of Texas law.

83.    The acts engaged in by Defendants are fraudulent and show a pattern of untruthful statements, false representations, concealment, intent to mislead, and a conspiracy to defraud that were all part of a scheme to mislead customers, and each misrepresentation to the consumer conforms to that scheme.

84.    These deceptive, unlawful and unfair acts and misrepresentations, as set out above, include but are not limited to the practice of representing that its customers who lease equipment within and without the State of Texas and do not provide an insurance certificate will be required to be placed in the Property Damage Coverage Program and to pay a Property Damage Surcharge as a result of Defendants' increased administrative costs and credit risk.

85.     Defendants represent through the Agreement, invoices, letters, and telephone communications that the charges are for Defendants' insurance and increased administrative costs and credit risk, when in fact the charges do not represent licensed insurance and greatly exceed and bear no fair relationship or reasonable correlation to any such costs or risks.

86.     Defendants further represent through the Agreement, invoices, and telephone communications that the UCC Filing Fee is its cost for filing a UCC Statement when in fact the charges greatly exceed the cost of filing the UCC Statement and in many cases, as in the case of the Plaintiff's copier equipment, Defendants fail to file the statement at all, yet still require Plaintiff and its other customers to pay the charge.

87.     Defendants further represent through the Agreement, invoices, and telephone communications that the Monthly Property Tax is an actual tax payable to a governmental entity, a "pass through" charge, as opposed to an estimation of amounts which may be owing at some time in the future.

88.     Defendants have no reasonable basis for estimating or charging any amounts beyond amounts reasonably related to such items identified.

89.     Defendants have concealed and suppressed from all of Defendants' customers and members of the public within and without the State of Texas the true fact that Defendants are not simply passing along Defendants' costs, but in fact the charges greatly exceed and bear no correlation or reasonable relationship to any such costs.

90.     Defendants' representations as set out above induced Plaintiff and others similarly situated to pay the amounts charged by Defendants, allowing Defendants to earn an undisclosed profit.

91.     The unlawful, unfair and fraudulent business practices set forth above present a continuing threat to members of the public in that Defendants continue to engage in the conduct described above.

92.     Such acts and omissions are unlawful and/or unfair and/or fraudulent and/or deceptive and/or misleading and/or untrue and constitute a violation of Texas Business &

Commerce Code §§ 1.103 and 1.304, and Texas Insurance Code § 541.151.  Plaintiff reserves the right to identify additional violations by Defendants as may be established through discovery.

93.      As a direct and legal result of its unlawful, unfair and fraudulent conduct described above, Defendants have been and will be unjustly enriched.  Specifically, Defendants have been unjustly enriched by the receipt of millions of dollars in ill-gotten gains from the false invoice charges it gave to customers.

## XI.

## FIFTH CLAIM
### ( Violations of the Deceptive Trade Practices Act)

94.      Plaintiff hereby incorporates by reference all allegations above, as though fully set forth at this point.

95.      At all times relevant, Plaintiff and class members were consumers under the Deceptive Trade Practices Act ("DTPA") because they were who acquired goods by a lease.

96.      Defendants are corporations which can be sued under the DTPA.

97.      Defendants violated the DTPA when they engaged in an unconscionable course of action, took advantage of Plaintiff's and class members' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.  Specifically, Defendants made the incorporated representations set forth in paragraphs 12-47 above in the terms of the Agreement, the invoices, letters and telephone communications.

98.      Defendants' representations regarding the Property Damage Surcharge and/or the UCC Filing Fee and/or the Monthly Property Tax and/or the alleged increased administrative costs and credit risks associated with these fees were false, as set forth in paragraphs 12-47 above.

99.      Further, when Defendants made the representations set out in paragraphs 12-47 above, they had no reasonable grounds for believing them to be true, as set forth in paragraphs 12-36.

100.     Defendants made the representations with the intention of inducing Plaintiff and class members to act in reliance upon these representations.

101.    Plaintiff and class members at the time the representations were made by Defendants, and at the time they took the actions herein alleged, were ignorant of the falsity of the representations, believed them to be true, and acted in reliance on these representations.

102.    As a proximate result of Defendants' wrongful conduct as herein alleged, Plaintiff and class members have paid monies to Defendants to which Defendants are not entitled, and have been damaged in an amount to be proven at trial.

103.    Plaintiff and class members seek recovery of unliquidated damages that are with in the jurisdictional limits of this court.

104.    Defendants acted knowingly and intentionally, which entitles Plaintiff and class members to recover treble damages under Texas Business & Commerce Code § 17.50(b)(1). Defendants made the representations with the intention of inducing Plaintiff and class members to act in reliance upon these representations in the manner as set forth in paragraphs 12-47 above.

105.    Plaintiff and class members are entitled to recover reasonable attorney fees for prosecuting this suit under Texas Business & Commerce Code § 17.50(d).

## XII.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Emmanuel Annor and class members pray for relief and judgment against Defendants, as follows:

1.    Injunctive and declaratory relief:

2.    Damages according to proof;

3.    Treble damages according to proof pursuant to Texas Business & Commerce Code § 17.50(b)(1);

4.    Punitive damages;

5.    A declaration that Defendants have violated the provisions of the Texas Business & Commerce Code, the Texas Uniform Commercial Code, and any other applicable statutory provisions;

6.      Injunctive relief enjoining Defendants, their subsidiaries, affiliates, and their successors, agents, servants, officer directors, employees, and all persons, acting in concert with them, directly or indirectly, from engaging in conduct violative of Texas Business and Commerce Code and the Texas Uniform Commercial Code, as more fully described above;

7.      An award of Plaintiff's reasonable attorney's fees under Texas Business & Commerce Code §§ 2A.108(d), 17.50(d), Civil Practice and Remedies Code § 38.0001(8), the Texas Insurance Code § 101.202, and any other applicable attorneys' fees provision under Federal or Texas State Law;

8.      Costs of suit incurred herein;

9.      Prejudgment interest as allowed by law; and

10.     Such other and further relief as this Court finds just, equitable and proper, including but not limited to, the remedy of disgorgement.

Respectfully submitted,

By:   ___/s/_____
            MATTHEW D. MURPHEY
            State Bar No. 24049166
            SDOT No. 613388
            ATTORNEY-IN-CHARGE
            TRACY GRAVES WOLF
            State Bar No. 24004994
            SDOT No. 625236
            TANJA K. MARTINI
            State Bar No. 24032581
            SDOT No. 31012

**GORDON & REES LLP**
2100 Ross Avenue, Suite 2800
Dallas, Texas  75201
(214) 231-4660 (Telephone)
(214) 461-4053 (Facsimile)

ATTORNEYS FOR PLAINTIFF
EMMANUEL ANNOR

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rules 5.1 and 5.3 on this the 1st day of June 2007.  Any other counsel of record will be served by first class mail.

Robert T. Mowrey
Locke Liddell & Sapp LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776

David Harrell
Locke Liddell & Sapp LLP
3400 JPMorgan Chase Tower
600 Travis
Houston, Texas 77002

Steven M. Smith
Smith & Smith, Attorneys at Law
4900 Woodway, Suite 1300
Houston, Texas 77056

_/s/_____
MATTHEW D. MURPHEY